IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS G. DAVIDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JP MORGAN CHASE BANK, N.A., | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

**INTRODUCTION**

1. Plaintiff brings this action to secure redress from unlawful mortgage servicing practices engaged in by defendant. Plaintiff alleges violation of the Cranston-Gonzales amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. ("RESPA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337 and 12 U.S.C. §2605.

3. Venue in this District is proper because defendant does or transacts business in this District and the events at issue occurred in this District.

**PARTIES**

4. Plaintiff Douglas G. Davidson resides in a single-family home in Chicago, Illinois.

5. Defendant JP Morgan Chase Bank, N.A. ("Chase"), is a federally chartered corporation with principal offices at 1111 Polaris Parkway, Columbus, OH 43240. It does

business in Illinois.

    6.    Defendant Chase is engaged in the residential mortgage servicing business. It services over $1 million in such loans.

## FACTS

    7.    Defendant Chase escrows funds to pay plaintiff's real estate taxes.

    8.    Plaintiff secured a reduction in his 2012 Cook County real estate tax bill for his residence. The first installment was $4,931.21. The second was $1,959.84. Chase was on notice of that reduction on July 1, 2013, when it payed the reduced tax amount.

    9.    Defendant Chase paid plaintiff's second tax installment in July, 2013.

    10.    At the time, plaintiff was paying $935.68/ month towards escrow.

    11.    At that rate, there would have been a substantial surplus in plaintiff's escrow account.

    12.    Plaintiff therefore tendered a reduced amount, sufficient to pay the revised real estate taxes.

    13.    Chase refused to apply the tendered amount to plaintiff's loan, instead assessing a late charge.

    14.    By letter of August 27, 2013 (Exhibit A), plaintiff requested that Chase reanalyze his escrow account and reduce the amount paid each month toward escrow. Plaintiff also requested that the late charge be waived.

    15.    On September 5, 2013, Chase sent plaintiff the "grace period notice" attached as Exhibit B.

    16.    On September 16, 2013, plaintiff sent Chase the letter attached as Exhibit C.

Exhibit C notified Chase of the errors contained in the grace period notice. Plaintiff also tendered to Chase the difference between the payment he previously sent and the amount Chase had demanded, which he paid under protest.

17. On September 19, 2013, Chase sent plaintiff the letter attached as Exhibit D. Exhibit D informed plaintiff that Chase was "unable to waive valid late charge" and failed to respond to any of the other matters raised by plaintiff regarding the escrow account.

18. On September 20, 2013, Chase sent plaintiff the letter attached as Exhibit E. Exhibit E advised plaintiff that Chase could not accept partial payments, that his account was subject to late charges and "credit reporting" if the full payment was not received, and that it had forwarded his question about his escrow account to "the appropriate department."

19. Also on September 20, 2013, Chase sent plaintiff the letter attached as Exhibit F. Exhibit F purported to respond to plaintiff's August 27, 2013 letter, and falsely informed plaintiff that his property tax had increased and that there was a shortage in his escrow account. Chase refused to reduce the amount it was demanding for monthly escrow payments and instead suggested that plaintiff should be paying more. The numbers Chase used in its letter did not reflect the reduced property tax figures, including the reduced amount Chase paid on July 1, 2013.

20. On October 1, 2013, plaintiff sent Chase the letter attached as Exhibit G. Exhibit G pointed out to Chase that the numbers it used in its September 20, 2013 letter were wrong, and advised plaintiff of the correct numbers.

21. On October 2, 2013, plaintiff sent Chase the letter attached as Exhibit H. Exhibit H once again requested that Chase waive its late charges.

22. On October 2, 2013, plaintiff sent Chase the letter attached as <u>Exhibit I</u>. <u>Exhibit I</u> informed Chase that plaintiff was paying the difference between what Chase was demanding and what plaintiff had sent under protest, and noted that Chase had been on notice since July 1, 2013 that the property taxes had decreased by over $2,000.

23. Chase has refused to correct the erroneous escrow deposit requirement.

**COUNT I – REAL ESTATE SETTLEMENT PROCEDURES ACT**

24. Plaintiff incorporates paragraphs 1-23.

25. <u>Exhibits A and C</u> are each a "qualified written request" as defined in the Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e).

26. The Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e), provides:

**(e) Duty of loan servicer to respond to borrower inquiries.**

**(1) Notice of receipt of inquiry.**

**(A) In general. If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.**

**(B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–**

**(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and**

**(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.**

4

**(2) Action with respect to inquiry.** Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–

**(A)** make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

**(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

**(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

**(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

**(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

**(3) Protection of credit rating.** During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 603 of the Fair Reporting Act [15 USC §1681a]).

27.    12 U.S.C. §2605(f) provides:

>**(f) Damages and costs.** Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
>>**(1) Individuals.** In the case of any action by an individual, an amount equal to the sum of--
>
>>>**(A)** any actual damages to the borrower as a result of the failure; and
>
>>>**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 1,000. . . .
>
>>**(3) Costs.** In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.  . . .

28. In violation of its obligations under the Cranston-Gonzales amendment, defendant failed to take appropriate corrective action.

29. In addition, Chase failed to defer "any action with respect to the inquiry of the borrower," by treating plaintiff's loan as in default.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the plaintiff and against defendant for:

    a.    Statutory damages;

    b.    Actual damages;

    c.    Attorney's fees, litigation expenses and costs of suit;

    d.    Such other or further relief as the Court deems proper.

        s/ Daniel A. Edelman
        Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC

120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

                                                            s/ Daniel A. Edelman
                                                            Daniel A. Edelman

T:\28889\Pleading\Complaint_Pleading.wpd

### **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\28889\Pleading\Complaint_Pleading.wpd